## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SUSAN WHITING, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Case No. 09-455 (RJL) |
| | ) |
| AARP and UNITED HEALTHCARE | ) |
| INSURANCE COMPANY, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION
(March **25**, 2010) [#15 and #17]

Plaintiff, Susan Whiting ("Whiting"), brings this action against AARP and United

HealthCare Insurance Company ("United HealthCare" and, together with AARP,

"defendants") alleging breach of contract, violation of the District of Columbia Consumer

Protection Procedures Act ("CPPA"), and unjust enrichment. Currently before the Court

are AARP's Motion to Dismiss Counts II, III, and IV of the Complaint for failure to state

a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6) and United

HealthCare's Motion to Dismiss Counts I, II, and III of the Complaint, also pursuant to

Rule 12(b)(6). Upon consideration of the parties' pleadings, relevant law, and the entire

record herein, the Court GRANTS both defendants' motions.

## BACKGROUND

### I.    The AARP Medical Advantage Plan

Plaintiff is a resident of Arizona and a member of AARP. Compl. ¶ 6. In or

around August 2007, Whiting received a letter signed by the Vice President of Member

Services, AARP Health Care Options that described the AARP Medical Advantage Plan, which has been underwritten by United HealthCare since 2003 and characterized by the defendants as "an affordable alternative to major medical insurance." *Id.* ¶¶ 11, 12, 14; *see also* Decl. of Scott M. Edson in Support of Def. United HealthCare Ins. Co.'s Mot. to Dismiss ("Edson Decl.") Ex. A.[1]  Indeed, in the letter that Whiting received in 2007, the AARP Medical Advantage Plan was described as suitable "if you're between jobs, retired early, or find yourself needing primary health insurance." Compl. ¶ 14; *see also* Edson Decl. Ex. B. Enclosed with the letter were marketing materials for the plan that stated, the "AARP Medical Advantage Plan is not a major medical health plan, but is a good option if you need essential health benefits today at an affordable price." Edson Decl. Ex. C. The marketing materials also acknowledged that AARP "is not the insurer" but instead "contracts with insurers to make coverage available to AARP members." *Id.*

On September 12, 2007, at the age of 59, Whiting applied for the AARP Medical Advantage Plan and selected the Gold level of coverage. Compl. ¶ 20. She received a letter dated September 25, 2007, welcoming her to AARP Health Care Options and confirming her enrollment in the AARP Medical Advantage Plan. *Id.* ¶ 21. The

---

[1]     A court may consider materials outside the complaint on a motion to dismiss if the documents are "incorporated into the complaint and are central to the plaintiff's claim." *Cole v. Powell*, 605 F. Supp. 2d 20, 23 n.1 (D.D.C. 2009). As plaintiff failed to attached to the Complaint the documents she extensively referenced in her Complaint, United HealthCare submitted authenticated versions with its Motion to Dismiss, which the Court will consider in this Memorandum Opinion. *See* United HealthCare's Mot. to Dismiss 3 n.2; Edson Decl. (authenticating referenced documents attached as exhibits).

Certificate of Insurance for the AARP Medical Advantage Plan was included with this letter. *Id.*

The first page of the Certificate of Insurance states, "Benefits are payable as shown in the Schedule of Benefits for" eight listed categories of medical costs, including Radiology Services and Laboratory/Pathology Services. Compl. ¶ 35. In a section entitled "WHAT IS COVERED," the Certificate provides that "United HealthCare will pay the Applicable Benefit shown in the Schedule of Benefits for the following covered stays and services which are not otherwise excluded (see WHAT IS NOT COVERED)." *Id.* ¶ 39; Edson Decl. Ex. D at 5. The Certificate of Insurance then specifies what is covered in each of the eight listed categories of medical costs, including the two at issue in this case:

> **Radiology Benefit** – If you incur a charge for a Radiology Service *performed in an outpatient setting*, a Radiology Benefit is payable, up to a maximum of $2,700.00 per procedure . . . .
>
> Note: If you are admitted to the Hospital as an inpatient directly from the emergency room or observation room, no Radiology Benefits are payable for services performed while you were confined in the emergency room or observation room.
>
> **Laboratory/Pathology Benefit** – If you incur a charge for a Laboratory/ Pathology Service *performed in an outpatient setting*, a Laboratory/Pathology Benefit is payable, up to a maximum of $1,600.00 per procedure . . . .
>
> Note: If you are admitted to the Hospital as an inpatient directly from the emergency room or observation room, no Laboratory/Pathology Benefits are payable for services performed while you were confined in the emergency room or observation room.

3

Edson Decl. Ex. D at 7 (italicized emphasis added); Compl. ¶ 39. The Certificate next identifies a series of exclusions under the heading "WHAT IS NOT COVERED," including:

> **Inpatient Confinements That Are Not Covered** – An inpatient Hospital confinement is not covered if the primary purpose of the confinement is to provide any of the following types of care: (1) care of the type provided in a clinic, rest home, convalescent home, home for the aged or assisted living center; (2) skilled nursing care; (3) intermediate care, extended care or custodial care; (4) residential care or care of the type provided in a domiciliary unit; (5) care of the type provided in a hospice; (6) care of the type provided in an Ambulatory Surgical Center or dialysis center; or (7) care consisting primarily of scheduled classes, training, education and/or recreation . . . .

Edson Decl. Ex. D at 8; Compl. ¶ 42. The Certificate also included a Schedule of Benefits, which is a detailed list of the rates at which specific rates will be paid. Edson Decl. Ex. D at 12-17; Compl. ¶¶ 46-47. The first two pages of the Schedule of Benefits set forth the benefits payable under each of the eight categories of medical costs listed in the "WHAT IS COVERED" section. Edson Decl. Ex. D at 5, 12-13. For both the Radiology Benefit and the Laboratory/Pathology Benefit, the Schedule of Benefits refers to additional tables that more specifically enumerate the rates at which covered benefits will be paid. *Id.* at 17. The monthly premium for the Gold level of coverage was $247.00 for individuals ages 55 through 59 and $264.25 for individuals ages 60 through 64. Compl. ¶ 23. Whiting has timely paid her monthly premiums since her enrollment in the AARP Medical Advantage Plan. *Id.*

4

## II. Whiting's Medical Costs and Insurance Claims

On September 23, 2008, Whiting was admitted to the emergency room at Banner Desert Medical Center ("Medical Center") in Phoenix, Arizona, for medical problems later found to be related to her gall bladder. Compl. ¶ 24. She was admitted as an inpatient to the Medical Center from the emergency room the same day. *Id.* ¶ 25. On September 26, 2008, Whiting underwent surgery to remove her gall bladder. *Id.* ¶ 26. She was released from the hospital the following day. *Id.* ¶ 27.

On or about November 24, 2008, Whiting received a bill from the Medical Center in the amount of $44,368.95. Compl. ¶ 28. The bill included items related to her hospitalization, including room and board, pharmacy, drugs, supplies, laboratory/pathology services, and radiology services. *Id.* United HealthCare paid $4500.00 of this bill, based on a rate of $1500.00 per day in the hospital. *Id.* ¶ 29. United HealthCare also paid separately for the surgeon who performed Whiting's surgery and for a total of ten physician visits in the Medical Center. *Id.* United HealthCare did not pay for, among other things, any laboratory/pathology services or radiology services, leaving the plaintiff with an outstanding bill of $39,868.95. *Id.* ¶ 30.

After United HealthCare refused to pay the remainder of her hospital bill, Whiting submitted claims to United HealthCare for the medical expenses she incurred, including the radiology and laboratory services. Compl. ¶ 31. In response to her claims, United HealthCare stated, "As the services by associated radiologists on 9/23/08-9/24/08 were

performed in an inpatient setting, no benefits are payable." *Id.* ¶ 32. She received a similar response to an inquiry she submitted on the AARP website: "The bills received are for services not eligible under your plan. Benefits are only payable when performed on an outpatient basis. As the services by Dr. Cook [with Pathology Specialists] on 9/26/08 were rendered in an inpatient setting, no benefits are payable." *Id.* ¶ 33 (alteration in original).

On March 5, 2009, plaintiff filed this suit as a purported class action against United HealthCare and AARP.[2] Whiting asserts four causes of action: (1) breach of contract against United HealthCare only; (2) breach of a third-party contract against both United HealthCare and AARP; (3) violation of the CPPA against both United HealthCare and AARP; and (4) unjust enrichment against AARP only. Both defendants move to dismiss the counts filed against them.

## ANALYSIS

### I.   **Standard of Review**

Federal Rule of Civil Procedure 12(b)(6) provides that a district court shall dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Although all factual allegations in a complaint are assumed to be true when deciding a Rule 12(b)(6) motion, and all reasonable inferences are drawn in a plaintiff's

---

[2]     All issues relating to class certification were stayed until further notice of the Court. Minute Order Granting Unopposed Mot. for Extension of Time to File Mot. for Class Certification, June 2, 2009.

favor, the Court need not accept either inferences "unsupported by the facts laid set out in the complaint" or "legal conclusions cast in the form of factual allegations." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (citations and internal quotation marks omitted). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). This plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* In addition, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, 'this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court.'" *Twombly*, 550 U.S. at 558 (quoting 5 WRIGHT & MILLER § 1216 at 233-234) (alteration in original).

## II. Count I: Breach of Contract

Plaintiff alleges in Count I of her complaint that by "reject[ing] Mrs. Whiting's

7

demand for payment for radiology and laboratory/pathology services that were performed during her confinement as an inpatient in the Medical Center . . . Defendant United HealthCare breached its contract with Mrs. Whiting." Compl. ¶ 83. As a result of United HealthCare's alleged breach, Whiting asserts that she has been "injured in that Defendant United HealthCare has refused to pay for services covered under the AARP Medical Advantage Plan." *Id.* ¶ 84. I disagree.

As an initial matter, Whiting and United HealthCare disagree as to whether Arizona or District of Columbia law should apply. *See* Def. United HealthCare's Mot. to Dismiss ("United HealthCare's Mot.") 11 n.4; Pl.'s Opp'n to United HealthCare's Mot. 14-19. However, the Court need not determine which jurisdiction's law prevails at this point because there is no conflict of law regarding the specific pleading deficiency asserted in United HealthCare's motion to dismiss Count I. *See YWCA v. Allstate Ins. Co.*, 275 F.3d 1145, 1150 (D.C. Cir. 2002). Under both Arizona and District of Columbia law, the text of an insurance contract controls if it is unambiguous. *See Roberts v. State Farm Fire & Cas. Co.*, 705 P.2d 1335, 1336-37 (Ariz. 1985); *Old Am. Ins. Co. v. Tucker*, 223 A.2d 334, 336 (D.C. 1966). Here, plain language of the Certificate of Insurance is clear and unambiguous that it does *not* provide the radiology and laboratory/pathology benefits that plaintiff seeks, and thus United HealthCare's denial of coverage of these services was not a breach of contract because they were not owed to Whiting under the Certificate of Insurance. How so?

8

Whiting asserts that the radiology and laboratory/pathology services performed "during her confinement as an inpatient" were covered under the AARP Medical Advantage Plan. Compl. ¶ 83. However, nothing in the Certificate provides for the payment of radiology, laboratory, or pathology services performed during inpatient confinement. In fact, the Radiology Benefit and Laboratory/Pathology Benefit provisions in the "WHAT IS COVERED"section of the Certificate expressly states that radiology and laboratory/pathology benefits are payable when such services are "performed in an *outpatient* setting." Edson Decl. Ex. D at 7 (emphasis added). Plaintiff herself quotes this same language in the Complaint. *See* Compl. ¶¶ 39(a), 40.

Moreover, the Certificate of Insurance, when read as a whole, is unambiguous with respect to this limitation of coverage. In fact, the Radiology Benefit and the Laboratory/Pathology Benefit provisions in the "WHAT IS COVERED" section include a "Note" that there shall be no benefit payable for such services performed in the emergency room or observation room, both of which are *outpatient* settings, if the insured is later admitted as an *inpatient* directly from the emergency or observation room. *See* Edson Decl. Ex. D at 7. If the Court were to use the plaintiff's interpretation of the Certificate, this Note would produce a nonsensical result: benefits would be payable for services performed both on an outpatient basis and on an inpatient basis, but not for services performed on an outpatient basis when the insured is later admitted as an inpatient. Such an interpretation is unreasonable and thus cannot control. *See Am.*

9

*Family Mut. Ins. Co. v. White*, 65 P.3d 449, 453 (Ariz. Ct. App. 2003); *1010 Potomac Assocs. v. Grocery Mfrs. of Am., Inc.*, 485 A.2d 199, 205 (D.C. 1984); *see also* RESTATEMENT (SECOND) OF CONTRACTS § 203(a) (1981) (cited in *1010 Potomac Assocs.*, 485 A.2d at 205) ("[A]n interpretation which gives a reasonable, lawful, and effective meaning to all the terms is preferred to an interpretation which leaves a part unreasonable, unlawful, or of no effect . . ."). Rather, the Note confirms United HealthCare's interpretation that under Certificate of Insurance for the AARP Medical Advantage Plan, there is no inpatient benefit for radiology, laboratory, and pathology services.

Finally, Whiting's argument that such services are necessarily covered because the "WHAT IS NOT COVERED" section fails to include an explicit exclusion of inpatient radiology or laboratory/pathology services is similarly to no avail. *See* Pl.'s Opp'n to United HealthCare's Mot. 25-26. The purpose of the "WHAT IS NOT COVERED" section, including the more specific provision "Inpatient Confinements That Are Not Covered," is to exclude those benefits that were *not* otherwise excluded: "United HealthCare will pay the Applicable Benefit shown in the Schedule of Benefits for the following covered stays and services which are not otherwise excluded (see WHAT IS NOT COVERED)." Edson Decl. Ex. D at 5. Because the Certificate already explicitly excludes inpatient radiology and laboratory/pathology services in the respective benefits provisions in the "WHAT IS COVERED" section, it is immaterial that the list of exclusions in the "WHAT IS NOT COVERED" section does not also mention such

10

services. *See U.S. Fid. & Guar. Corp. v. Advance Roofing & Supply Co.*, 788 P.2d 1227, 1234 (Ariz. Ct. App. 1989); *Byrd v. Nationwide Mut. Ins. Co.*, 415 A.2d 807, 808-09 (D.C. 1980).[3]

Therefore, Whiting's breach of contract claim against United HealthCare must fail as a matter of law because the contract on which she relies—i.e., the Certificate of Insurance—gives her no entitlement to the coverage she seeks, and thus United Healthcare's denial of coverage was not a breach. Absent any breach of contract, Count I must be dismissed for failure to state a claim upon which relief may be granted.

## III.    Count II: Third Party Beneficiary Claim for Breach of Contract

In Count II, Whiting alleges that the defendants "entered into a contract pursuant to which United HealthCare issued Group Policy No. G-36000-5 to the Trustees of The AARP Insurance Plan." Compl. ¶ 86.[4]  She claims that the purpose of this contract was "to 'make coverage available to AARP members,'" *id.* ¶ 87, and that she is a third-party beneficiary of this contract, *id.* ¶ 88. She alleges that United HealthCare's failure to pay for her inpatient radiology and laboratory/pathology services was a breach of its

---

[3]    Whiting also argues that if the Court determines that the Certificate is ambiguous with respect to the coverage of inpatient radiology, laboratory, and pathology services, any doubt must be resolved against United HealthCare. *See* Pl.'s Opp'n to United HealthCare's Mot. 26. This argument is unavailing as well, having already determined the Certificate is unambiguous. *See Roberts*, 705 P.2d at 1336-37; *Old Am. Ins. Co.*, 233 A.2d at 336.

[4]    In dismissing Count II, the Court does not consider whether AARP, as opposed to the AARP Trustees, is the proper party with respect to the third-party beneficiary claim.

agreement with AARP and that she was thus injured as a third-party beneficiary. *Id.*
¶¶ 89-90. I disagree.

Whiting's third-party beneficiary claim against United HealthCare and AARP
must be dismissed because United HealthCare did not fail to provide Whiting coverage
owed to her.[5] Her allegations of harm as a third-party beneficiary to a contract between
the defendants are entirely redundant of her breach of contract claim against United
HealthCare. *See* Compl. ¶ 89 ("By virtue of United HealthCare's failure to pay for
covered services under the AARP Medical Advantage Plan, including radiology and
laboratory/pathology services administered in an inpatient setting, United HealthCare
breached its agreement with AARP."). As I concluded above, United HealthCare
provided all coverage owed to Whiting under her plan. The fact that Whiting desires
more coverage beyond what her policy provides does not give rise to a legally cognizable
cause of action against either defendant. Therefore, her third-party beneficiary claim for
breach of contract against United HealthCare and AARP must be dismissed for failure to
state a claim upon which relief can be granted.

---

[5]     Because Whiting has not identified the specific contract under which she claims to
be a third-party beneficiary, the Court cannot determine whether Arizona or District of
Columbia law applies. This distinction is irrelevant for the purposes of dismissing Count
II, however, because both jurisdictions require a third-party beneficiary to plead facts
showing that she is the intended beneficiary of the contract at issue and that the defendant
breached a duty to her created by the third-party contract. *See Sherman v. First Am. Title
Ins. Co.*, 38 P.3d 1229, 1232 (Ariz. Ct. App. 2002); *Sidibe v. Traveler's Ins. Co.*, 468 F.
Supp. 2d 97, 100-01 (D.D.C. 2006) (applying District of Columbia law).

## IV. Count III: Violation of the District of Columbia's Consumer Protection Procedures Act

Whiting next alleges that both defendants violated the District of Columbia's CPPA by misrepresenting the extent of coverage provided under the AARP Medical Advantage Plan. The alleged misrepresentations fall into two categories: (1) that the AARP Medical Advantage Plan provided comprehensive or major medical insurance, *see* Compl. ¶¶ 52-55, 96, and (2) that the plan covered inpatient radiology, laboratory, and pathology services, *see id.* ¶¶ 56-58, 97-98.

As an initial matter, United HealthCare and Whiting again dispute whether the District of Columbia's CPPA or the comparable Arizona statute, ARIZ. REV. STAT. ANN. § 44-1522, governs this claim.[6] Given the different pleading requirements under District of Columbia and Arizona law, the Court must determine which law to apply to this claim. *See YWCA*, 275 F.3d at 1150. In a diversity case such as this one, the law of the forum state supplies the applicable choice-of-law standard. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). Under District of Columbia law, courts employ a "modified governmental interests analysis which seeks to identify the jurisdiction with the most significant relationship to the dispute." *Washkoviak v. Student Loan Mktg. Ass'n*, 900 A.2d 168, 180 (D.C. 2006) (internal quotation marks omitted). In this analysis, the

---

[6]     AARP accepts Whiting's allegation that she is properly proceeding under the District of Columbia's CPPA for the purposes of AARP's motion to dismiss. *See* AARP's Mot. to Dismiss ("AARP's Mot.") 12 n.5.

Court "evaluate[s] the governmental policies underlying the applicable laws and determine[s] which jurisdiction's policy would be more advanced by the application of its law to the facts of the case under review." *Id.* The Court also considers the four factors listed in the Restatement (Second) of Conflict of Laws § 145: (1) where the injury occurred; (2) where the conduct causing the injury occurred; (3) the parties' domicile, residence, nationality, place of incorporation, and place of business; and (4) the place where the relationship is centered. *Id.*

Using this framework, I find that the District of Columbia's CPPA does apply to this case. As for the governmental policies underlying the applicable laws, both the District of Columbia and Arizona have a strong and equal interest in ensuring that its corporate citizens refrain from misrepresentations. With respect to the four Restatement factors, neither Whiting nor United HealthCare is a resident of the District of Columbia, but the Complaint, the factual assertions of which are accepted as true, states that "Defendant AARP is located in this District and Defendants AARP and United HealthCare have, at all relevant times, transacted business in this District." Compl. ¶ 10. In addition, the Complaint asserts that "the Certificate of Insurance states that the policy is 'delivered in and governed by the laws of the District of Columbia.'" *Id.* Based on these facts, the District of Columbia has a qualitatively greater interest in this controversy, and thus District of Columbia law applies. *See Washkoviak*, 900 A.2d at 182.

The District of Columbia's CPPA makes it a violation to:

14

(a) represent that goods or services have a source, sponsorship, approval, certification, accessories, characteristics, ingredients, uses, benefits, or quantities that they do not have;

. . . .

(d) represent that goods or services are of particular standard, quality, grade, style, or model, if in fact they are of another;

(e) misrepresent as to a material fact which has a tendency to mislead;

(f) fail to state a material fact if such failure tends to mislead . . . .

D.C. Code § 28-3904. "[A] claim of an unfair trade practice [under the CPPA] is properly considered in terms of how the practice would be viewed and understood by a reasonable consumer." *Pearson v. Chung*, 961 A.2d 1067, 1075 (D.C. 2008).

Regarding the first alleged category of misrepresentations, that the AARP Medical Advantage Plan provided comprehensive or major medical insurance, Whiting has failed to identify any conduct actionable under the CPPA. All statements that she points to as misleading are in fact either accurate, not misleading to a reasonable consumer, or mere puffery. For instance, Whiting takes issue with language stating that the AARP Medical Advantage Plan provides an "alternative" to "major medical insurance"; that the plan was appropriate for individuals who were "between jobs, [had] retired early, or [found themselves] needing primary health insurance"; and that it was a "good option for individuals who are looking for an alternative or otherwise lack access to major medical insurance" or for those who need a "bridge between now and when [they] become eligible for Medicare benefits." *See* Compl. ¶ 96. This language, especially when viewed in context, would not have misled a reasonable consumer into thinking that the AARP Medical Advantage Plan constituted comprehensive, major medical health insurance.

15

The letter that Whiting received informing her of the AARP Medical Advantage Plan described it as "an alternative plan *that is not major medical*, yet provides essential health benefits at an affordable price." Edson Decl. Ex. B (emphasis added). The marketing materials enclosed with the letter stated, "The AARP Medical Advantage Plan is *not a major medical health plan*, but is a good option if you need essential health benefits today at an affordable price." Edson Decl. Ex. C (emphasis added). The first page of the Certificate of Insurance states, in all capital letters, "THIS CERTIFICATE PROVIDES *LIMITED BENEFITS* AND *DOES NOT MEET THE STANDARDS OF* A MEDICARE SUPPLEMENT, A LONG TERM CARE, OR *A MAJOR MEDICAL PLAN*." Edson Decl. Ex. D at 1 (emphasis added). Surely a reasonable consumer would have concluded from reading these documents that the AARP Medical Advantage Plan was *not* a major medical plan and instead conferred, to quote the Certificate of Insurance directly, "limited benefits." Quite simply, there is no misrepresentation here, and no reasonable consumer would have been mislead. These documents accurately portrayed that the AARP Medical Advantage Plan was an "alternative" plan to a major medical plan. As such, it would not provide comprehensive coverage like that of a major medical plan.[7]

---

[7]     Furthermore, even when viewed in isolation, other statements that Whiting cites—that the policy provides "peace of mind" and "essential health benefits" or "is a smart option"—are too general and subjective in nature to be considered misrepresentations. *See* Compl. ¶¶ 14, 16. Instead, these representations are, at most, mere puffery, i.e., "the exaggerations reasonably to be expected of a seller as to the degree of quality of his product, the truth or falsity of which cannot be precisely determined." *Tietsworth v. Harley-Davidson, Inc.*, 677 N.W.2d 233, 245 (Wis. 2004)

As to the second category of alleged misrepresentations, that the AARP Medical Advantage Plan covered inpatient radiology, laboratory, and pathology services, I have already concluded that the Certificate of Insurance is clear and unambiguous in not covering these services.[8] In addition, the marketing materials that Whiting received before she enrolled in the AARP Medical Advantage Plan included a chart delineating the covered benefits under the Bronze, Silver, and Gold levels of coverage. *See* Edson Decl. Ex. C. This chart expressly excludes inpatient laboratory/pathology and radiology services from coverage by listing the amounts available under the plan for "Lab/Pathology (Outpatient Only)" and "Radiology (Outpatient Only)." *Id.* In light of these clear descriptions of what was covered under the AARP Medical Advantage Plan, none of the "misrepresentations" that the plaintiff alleges are sufficient to establish a violation

---

(quoted in *Pearson*, 961 A.2d at 1076); *see also Margolis v. U-Haul Int'l Inc.*, Case No. 2007 CA 005245 B, slip op. at 19-20 (D.C. Super. Ct. Dec. 17, 2009) (defining puffery as "outrageous generalized statement . . . that [is] so exaggerated as to preclude reliance by consumers") (internal quotation marks omitted) (quoting *Cook, Perkiss & Liehe, Inc. v. N. Cali. Collection Serv. Inc.*, 911 F.2d 242, 246 (9th Cir. 1990)). Puffery cannot be the basis for a claim for unfair trade practice under the CPPA. *See Pearson*, 961 A.2d at 1076; *see also Hoyte v. Yum! Brands, Inc.*, 489 F. Supp. 2d 24, 30 (D.D.C. 2007) ("KFC's claims that its restaurants serve the 'best food' is a non-measurable, 'bald statement of superiority' that is non-actionable puffery."); *Wells v. Allstate Ins. Co.*, 210 F.R.D. 1, 3 n.3 (D.D.C. 2002) (citing summary judgment ruling that "the slogan 'You're in good hands with Allstate' is mere puffery not actionable as false or misleading advertising").

[8] Whiting does not allege any advertisement of a specific benefit that was not covered. In fact, she expressly acknowledges receiving coverage for many expenses, including a portion of her hospital stay, the surgeon who performed her surgery, and ten physician visits in the Medical Center. Compl. ¶ 29.

17

of the CPPA under the reasonable consumer standard. Therefore, Whiting's claims under the CPPA against both United HealthCare and AARP must be dismissed.[9]

## V.    Count IV: Unjust Enrichment

Finally, Whiting alleges AARP was unjustly enriched by virtue of the "royalties and other fees [it received] from United HealthCare in connection with the sale of the AARP Medical Advantage Plan with the AARP brand name." Compl. ¶ 102. Whiting asserts that "[t]he insurance premiums United HealthCare set, charged and accepted from Mrs. Whiting . . . reflected the royalties and other fees payable by United HealthCare to AARP." *Id.* Whiting claims that because she paid her premiums under the AARP Medical Advantage Plan but "received scant coverage and incurred unreimbursed medical costs," AARP was improperly benefitted. *Id.* Not quite.

Unjust enrichment is an equitable doctrine under which a plaintiff may recover "when:  (1) the plaintiff conferred a benefit on the defendant; (2) the defendant retains the benefit; and (3) under the circumstances, the defendant's retention of the benefit is unjust." *News World Commc'ns, Inc. v. Thompsen*, 878 A.2d 1218, 1222 (D.C. 2005).[10]

---

[9]     Because the Court finds that Whiting has failed to allege any actionable conduct, the Court does not consider AARP's arguments regarding nonprofit organization activity or the definition of "merchant" under the CPPA.

[10]     The Court need not choose between District of Columbia and Arizona law because they are consistent with respect to the issues presented in regarding Count IV. *See News World Commc'ns*, 878 A.2d at 1222; *Trustmark Ins. Co. v. Bank One, Ariz., NA*, 48 P.3d 485, 491 (Ariz. Ct. App. 2002) ("To establish a claim for unjust enrichment, a party must show:  (1) an enrichment; (2) an impoverishment; (3) a connection between the enrichment and the impoverishment; (4) the absence of justification for the enrichment

Under the facts of this case, it is clear that AARP was not unjustly benefitted by the premiums that Whiting paid to United HealthCare under the AARP Medical Advantage Plan.[11]

Whiting's alleged injuries on her unjust enrichment claim against AARP arise from the same alleged breach of her contract with United HealthCare. *Compare* Compl. ¶ 90 ("As a direct and proximate result of United HealthCare's breach of its contract with AARP, Mrs. Whiting and member of the Class . . . have failed to receive coverage for services for which benefits were payable and have been paying premiums for scant coverage."), *with* Compl. ¶ 102 ("Mrs. Whiting and the members of the Class paid their premiums, but received scant coverage and incurred unreimbursed medical costs that United HealthCare [sic]."). In short, she is seeking both reimbursement for "premiums paid" to United HealthCare, Compl. Prayer for Relief (c), and "restitution by AARP of amounts unjustly received as royalties," *id.* Prayer for Relief (f), although she alleges that the premiums she paid "reflected the royalties and other fees payable by United HealthCare to AARP," *id.* ¶ 102. Plaintiff does not allege how her premium amounts

---

and the impoverishment; and (5) the absence of a legal remedy.").

[11]     AARP does not assert that Whiting's unjust enrichment claim should be dismissed because an express contract already governs the relationship between Whiting and AARP. *See* AARP's Mot. 22-24 (discussing how Whiting had an express contract with United HealthCare); Reply Mem. in Supp. of AARP's Mot. 16 (same). As such, the Court does not consider whether Whiting's membership in AARP indicates the existence of an express contract that precludes Whiting's unjust enrichment claim against AARP. *See, e.g., Schiff v. Am. Ass'n of Retired Pers.*, 697 A.2d 1193, 1194 & n.2 (D.C. 1997).

were calculated.

Having already found that there was no breach of contract and no
misrepresentation of coverage in violation of the CPPA, Whiting cannot prevail on her
unjust enrichment claim against AARP. Simply put, AARP was *justly* enriched by
whatever royalties it received from United HealthCare that were derived from the
premiums Whiting paid under the AARP Medical Advantage Plan. Whiting received the
benefits she paid for, and AARP thus received the royalties it was due. Moreover,
Whiting was aware prior to her enrollment in the AARP Medical Advantage Program that
AARP would "receive[] an annual royalty from United HealthCare for the use of the
AARP trademark." Compl. ¶ 18. In other words, she knew from the outset that AARP
would be paid royalties by United HealthCare and that United Healthcare would
underwrite Plaintiff's indemnity policy. Thus, regardless of whether United HealthCare
improperly denied coverage as alleged, Whiting did not confer any unexpected or
unanticipated benefit on AARP. *See Jordan Keys & Jessamy, LLP v. St. Paul Fire &
Marine Ins. Co.*, 870 A.2d 58, 65-66 (D.C. 2005) (finding no unjust enrichment when the
benefit was contemplated from the outset). Because United HealthCare did not
improperly deny coverage of her inpatient radiology and laboratory/pathology services, it
is even clearer that AARP was not unjustly enriched by virtue of the royalty it received

from United HealthCare.[12] Thus, as with her other claims, Whiting's claim for unjust enrichment must be dismissed under Rule 12(b)(6).

## CONCLUSION

For all of the foregoing reasons, the Court GRANTS the defendant's Motion To Dismiss and DISMISSES the action in its entirety. An order consistent with this decision accompanies this Memorandum Opinion.

RICHARD J. LEON
United States District Judge

---

[12]  Because the Court finds no unjust enrichment, the Court does not consider whether plaintiff's efforts to recover whatever portion of her premiums reflect royalties paid by United HealthCare to AARP should be denied as too remote.

21